Ussery v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-212-CR

     JONATHAN LOREN USSERY,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the County Court at Law No. 2
Brazos County, Texas
Trial Court # 2408-91
                                                                                                    

O P I N I O N
                                                                                                    

      Ussery appeals his conviction for the misdemeanor offense of driving while intoxicated
causing serious bodily injury. The jury found him guilty, and the court assessed punishment at
two years in jail and a $2500 fine.
      In point one Ussery complains that the court abused its discretion in refusing to accept his
written election for the jury to assess punishment, filed on the day of trial. Article 28.01, section
2, of the Texas Code of Criminal Procedure provides that when a case is set for pretrial hearing
any preliminary matters "not raised or filed seven days before the hearing will not thereafter be
allowed to be raised or filed, except by permission of the court for good cause shown."


 
According to the Court of Criminal Appeals, when a pretrial hearing is held the defendant is
required to file his election to have the jury assess punishment within the time prescribed by article
28.01, section 2.


 In this case pretrial hearings were held on January 17 and February 7, 1992. 
The trial, which had originally been set for February 11, was reset for March 17, and the final
pretrial hearing was held on March 13. Ussery announced ready for trial at the final pretrial
hearing but did not file the written election for the jury to assess punishment until March 17. 
Because the election was not filed within the time prescribed by article 28.01, we overrule point
of error one.
      In point two Ussery contends that the court erred in admitting an oral admission in violation
of article 38.22 of the Texas Code of Criminal Procedure. An oral admission made while in
custody is generally inadmissible under section 3 of article 38.22.


 According to section 5,
however, "Nothing in this article precludes the admission . . . of a statement that does not stem
from custodial interrogation . . . ."


 In Wicker v. State the Court of Criminal Appeals set out four
factors to consider when determining whether a defendant was in custody at the time an oral
admission was made: (1) whether probable cause to arrest existed; (2) whether the defendant was
the focus of the investigation; (3) the subjective intent of the police; and (4) the subjective belief
of the defendant.



      Adam Moses was the first police officer on the scene. He testified that when he arrived he
saw a small gold car that was quite damaged from an accident. Moses left the driver of the
passenger car with the paramedics, who had also just arrived, and began to look for another
vehicle. A red pickup truck, which he found "quite a ways off the highway," had gone down an
embankment. According to Moses, "There was a man standing at the back of the pickup truck,
and I walked up and I asked him if it was his truck. And he said yes, so I asked him if he was
injured. And he said no." Moses testified that he could smell alcohol on Ussery, who appeared
to be in a dazed condition. Moses then helped Ussery back up the hill and "decided to detain him
for the DPS troopers until they got there." Moses placed Ussery in the back seat of his patrol car
until Gary Shaw, a trooper with the Department of Public Safety, arrived. Moses then turned
Ussery over to Shaw and returned to the small gold car. Although Moses characterized Ussery
as being in custody when he was placed in the patrol car, Moses testified that he had not actually
placed Ussery under arrest at that point. According to Moses, he needed to make sure Ussery did
not leave the scene of the accident. Moses also testified, "I didn't feel he needed to be walking
around in a dazed condition like that."
      Gary Shaw testified that when he arrived an emergency rescue team was trying to get the
driver out of the passenger car with the Jaws of Life. He then looked over the scene and saw a
pickup truck down a steep embankment. When Kelvin Dawson, another DPS trooper, arrived,
Shaw assisted him with the investigation. Shaw testified that the only time he talked with Ussery
was when Dawson got Ussery out of the car to examine the wounds on his leg. According to
Shaw, Ussery appeared intoxicated and had the smell of alcohol on his breath.
      Kelvin Dawson testified that volunteer firemen were cutting the roof off of a gold vehicle near
the shoulder of the highway when he arrived on the scene. As he was examining the vehicle, he
met Shaw and was informed that there was another vehicle down an embankment. After looking
over the scene he interviewed several witnesses. He then went to the patrol car where Ussery was
seated to see if he was a driver of a vehicle that may have been involved in the accident. Dawson
asked Ussery to step out of the patrol car and interviewed him to determine his identity, whether
he was the person whose driver's license Shaw had passed along to him, whether he was the driver
of the pickup, and if he had been drinking. According to Dawson, Ussery said he did not know
what happened but that he had been drinking and that he was driving the pickup. Ussery then told
him that he did not hit anyone; his vehicle just ran off the roadway. According to Dawson, Ussery
had a strong odor of alcohol on his breath, his eyes were red and watery, and he was a bit
unsteady while attempting to stand. Ussery also complained that his leg was hurting, but he said
that he did not want to go to the hospital. Dawson asked Ussery to have a seat again inside the
patrol car while Dawson continued his investigation of the scene. He then returned to the patrol
car and asked Ussery to step out. Ussery again complained of pain, and Dawson had a paramedic
examine and treat a wound on Ussery's left leg. He still did not want to go to the hospital,
however. Dawson then placed Ussery under arrest for driving while intoxicated, took him to the
DPS patrol car, and advised him of his Miranda rights.
      When a police officer properly detains a person to conduct an investigation, Miranda
warnings are not required until a suspect is in custody.


 Furthermore, placing a person in a police
patrol car does not necessarily result in a custodial arrest.


 Dawson's pre-arrest questioning of
whether Ussery had been drinking and driving did not constitute custodial interrogation.


 The
probable cause to arrest Ussery for driving while intoxicated arose out of the entire investigation. 
When Dawson interviewed Ussery, he was not yet the focus of the investigation. At that point,
Dawson was attempting to determine whether Ussery had even been involved in the accident. The
record reflects that Dawson's subjective intent was to conduct a complete investigation. As a
result, Ussery's admissions were not the result of custodial interrogation.


 We overrule point of
error two.
      In point three Ussery contends that the court erred in refusing his special requested charge on
unlawfully obtained evidence. Ussery asked "that the Court include a 38.23 Charge that
specifically allows the jury and requests the jury to make a determination about whether any
evidence was illegally obtained in this case and, therefore, should be disqualified for consideration
by the jury." The court overruled his request.
      The State argues that Ussery's request was insufficient to preserve his complaint. Article
36.15 of the Texas Code of Criminal Procedure provides:
Before the court reads his charge to the jury, counsel on both sides shall have a
reasonable time to present written instructions and ask that they be given to the jury. The
requirement that the instructions be in writing is complied with if the instructions are
dictated to the court reporter in the presence of the court and the state's counsel, before
the reading of the court's charge to the jury.




Ussery failed to present any requested instructions to the court as required by article 36.15. His
request, although improper, was sufficient, however, to apprise the court of his objection to the
omission of an instruction for the jury to disregard any unlawfully obtained evidence.



      The State also argues that, because the record did not raise a fact issue on unlawfully obtained
evidence, the court properly denied the special requested charge.


 Ussery relies solely upon
Moses' testimony that Ussery was in custody when he was detained in the back seat of the patrol
car to await the arrival of the DPS troopers. On redirect examination, however, Moses testified
that Ussery was not actually under arrest at that point. Because we find that Ussery has failed to
raise a fact issue on unlawfully obtained evidence, we overrule point of error three.
      In point four Ussery contends that the evidence is insufficient to support his conviction for
driving while intoxicated. In reviewing the legal sufficiency of the evidence, we must determine
whether, after viewing the evidence in the light most favorable to the verdict, any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt.


 Ussery
argues that the case turned on a single issue—whether he was driving the pickup truck. Ussery's
confession to driving the truck, which we have already determined to be properly admitted, was
sufficiently corroborated by evidence that a crime had been committed.



      Alice Eaton testified that she was working at a convenience store on the night of the accident
when Ussery came in and purchased some orange juice, milk, cookies, and candy bars. According
to Ms. Eaton, Ussery appeared intoxicated and had trouble paying for the goods. She also
testified that, after Ussery left, two men came to the store asking her to call "911" because there
had been an accident. Her husband, Joseph Eaton, testified that he was reading the gas pumps to
help his wife close the store when he saw a white male with a beard get in a red pickup truck and
leave without turning on the headlights. Someone then drove up and told him there had been
accident. He drove down the highway to the accident scene and found the same red pickup truck
that had just left the store. Mr. Eaton identified Ussery as the person whom he saw standing near
the truck when he arrived on the scene. Mr. Eaton stayed with Ussery, who was the only person
near the truck, until Moses arrived.
      Chris and Cheli Winn testified that they followed a red pickup truck out of the convenience
store parking lot. According to the Winns, the pickup traveled down the highway without any
lights on, crossed over into the oncoming lane of traffic, and collided with a car. Viewing the
evidence in the light most favorable to the verdict, we conclude that any rational trier of fact could
have found, beyond a reasonable doubt, that Ussery was the driver of the red pickup. 
Accordingly, we overrule point of error four.
      In point five Ussery contends that he was denied effective assistance of counsel by his pretrial
attorney's failure to timely file a written election for the jury to assess punishment. We note that
John T. Quinn, Ussery's attorney on appeal, was substituted for Ussery's pretrial attorney several
days prior to the final pretrial hearing. For obvious reasons, Ussery's brief complains only of
ineffective assistance by his original "pretrial" counsel.
      The error complained of occurred before trial but dealt solely with the punishment phase of
the trial. Therefore, the proper standard for determining whether Ussery suffered ineffective
assistance of counsel is whether he received reasonably effective assistance of counsel.


 In
reviewing an attorney's assistance, the court must examine the totality of the representation.


 The
"reasonably effective assistance" standard does not mean errorless counsel or counsel judged
ineffective by hindsight, but counsel reasonably likely to render effective assistance and reasonably
rendering effective assistance.



      In this case Quinn was substituted for Ussery's original pretrial attorney on March 10, 1992. 
On March 17, in support of Ussery's motion for the jury to elect punishment, Quinn testified that
he first spoke with Ussery by telephone on March 12 and made a "tentative decision" to have the
jury assess punishment. Quinn attended the final pretrial hearing on March 13 but did not file a
written election for the jury to assess punishment at that time. Quinn testified that he met with
Ussery for the first time on March 16 and the decision to have the jury assess punishment "was
firmed up." According to Quinn, he had never detected Ussery's original counsel as being
incompetent and had not determined any inability on the part of that attorney to effectively
represent Ussery. There is no other evidence that Ussery's original attorney was not reasonably
likely to render effective assistance or that he did not reasonably render effective assistance. In
light of Quinn's testimony that they did not "firm up" the decision to have the jury assess
punishment until March 16, Ussery's original pretrial attorney, who withdrew from the case on
March 10, cannot be faulted for failing to carry out Ussery's decision to have a jury assess
punishment.


 Accordingly, we overrule point of error five.
      We affirm the judgment.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed April 21, 1993
Do not publish